Firm ID. #62848

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NORTHWESTERN MEMORIAL HEALTHCARE,<br><br>          Plaintiff,<br><br>     vs.<br><br>ANTHEM INSURANCE COMPANIES, INC. d.b.a. ANTHEM BLUE CROSS AND BLUE SHIELD; COMMUNITY INSURANCE COMPANY d.b.a. ANTHEM BLUE CROSS AND BLUE SHIELD; ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; and DOES 1 THROUGH 25, INCLUSIVE,<br><br>          Defendants. | Case No.: 1:21-cv-06306<br><br>RESPONSE IN OPPOSITION OF MOTION<br><br>District Judge: Hon. Gary Feinerman<br><br>Magistrate Judge: Hon. Beth W. Jantz<br><br>Removed from Cook County 2021 L 008292 |

### PLAINTIFF NORTHWESTERN MEMORIAL HEALTHCARE' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AT LAW

Plaintiff, NORTHWESTERN MEMORIAL HEALTHCARE, (hereinafter "NMH"), by

and through its attorneys, LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN,

hereby file this Opposition to the Motion to Dismiss of ANTHEM INSURANCE COMPANIES,

INC. D.B.A. ANTHEM BLUE CROSS AND BLUE SHIELD; COMMUNITY INSURANCE

COMPANY D.B.A. ANTHEM BLUE CROSS AND BLUE SHIELD; ANTHEM BLUE

CROSS LIFE AND HEALTH INSURANCE COMPANY (hereinafter "Defendant"), which was

filed pursuant to Fed. R.Civ.P. 12(b)(6) ("MTD").  ECF No. 7.

### INTRODUCTION

Defendant's MTD must be denied.  NMH sufficiently pled its breach of implied in fact

contract and *quantum meruit* causes of action seeking the reasonable and customary value of the services provided. *See* Complaint. ECF No. 1-1, Counts I & II. The fact that NMH believes the reasonable and customary value of those services to be equal to its total billed charges does not preclude NMH from seeking full recovery for the reasonable value of the services provided from Defendant.

As shown below, Defendant's MTD fails on a number of bases: i) the Complaint *did* plead sufficient facts to allege breach of implied-in-fact contract because the contract price is the usual and customary value of the medically necessary services rendered by NMH and the parties meetings of the minds was demonstrated through the parties alleged conduct; ii) Defendant's verification of benefits and/or authorization of treatment were some but not all of the circumstances that created a contract; and iii) NMH *did* sufficiently plead facts to allege a *quantum meruit* cause of action because Defendant both requested and benefited from the services rendered by NMH.

Nonetheless, should the Court grant Defendant's MTD, NMH respectfully requests the Court grant it leave to file an amended complaint to correct any perceived deficiencies.

## I. <u>BACKGROUND</u>

NMH is a not-for-profit corporation organized and existing pursuant to the laws of the State of Illinois. Complaint at ¶ 4. NMH provided medical care to Patients (as such term is defined herein), who were Defendant's beneficiaries when such medical care was provided. *Id*. Defendant is a domestic insurance company, incorporated outside the State of Illinois, that ensures the Patients receive the healthcare and other services they need. *Id.*; *See* MTD. NMH,

---

between the dates of September 5, 2018, and January 21, 2021, provided medically necessary treatment to the individuals identified on the spreadsheet attached as Exhibit A to the Complaint (and which is incorporated herein by this reference as though set forth in full) (the "Patients") totaling sixteen (16) claims. Complaint at ¶ 11. Defendant failed to pay NMH fully and properly for the medically necessary services, supplies, and/or equipment rendered to Patients, despite demands thereof. *Id.* at ¶ 17. As a direct and proximate result of Defendant's misconduct, NMH has suffered damages. *Id.* at ¶32, 54. Thus, NMH filed its two-count complaint against Defendant for (i) breach of implied-in-fact contract and (ii) *quantum meruit*. *See generally* Complaint. Defendant filed its Motion to Dismiss in response. *See* MTD.

## II. STANDARD OF REVIEW

The purpose of a motion under Fed.R.Civ.P. 12(b)(6) is to test the facial sufficiency of a complaint. It should be read alongside Fed.R.Civ.P. 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 167 L.Ed.2d 929 (2007), to survive a 12(b)(6) motion to dismiss, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." The Court must "view all the complaint's allegations in the light most favorable to the plaintiff, consider the complaint's allegations as true, and accept all reasonable inferences therefrom." *Conley v. Gibson,* 355 U.S. 41, 45 (1957). Thus, a complaint will be dismissed only if taking facts as true, no construction of the factual allegations will support the cause of action. *Bell v. Hood,* 327 U.S. 678, 682, (1946). A well-pled complaint will survive a motion to dismiss "even

---

if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 127 S.Ct. at 1965. Motions to dismiss should be granted only where it appears beyond a doubt that plaintiff cannot prove any set of facts in support of the claim that would entitle plaintiff to relief. *Conley,* 355 U.S. at 45-46.

## II.     ARGUMENT

### NMH'S SECTION 12(b)(6) MOTION SHOULD BE DENIED BECAUSE THE COMPLAINT PROPERLY ALLEGES BREACH OF AN IMPLIED-IN-FACT CONTRACT AND *QUANTUM MERUIT* CAUSES OF ACTION

### a.     *NMH's Breach Of Implied-In-Fact Contract Claim Survives.*

NMH properly alleged in its Complaint that the parties entered into an implied-in-fact contract. Complaint ¶¶ 20-33. The elements of a contract implied-in-fact are an offer, acceptance, and consideration. *Trapani Construction Co. v. The Elliot Group, Inc*., 2016 IL App (1st) 143734, ¶ 42. Like an express contract, there must be a meeting of the minds for the implied-in-fact contract to be valid. *Id.* at ¶¶ 42-43. Whether the parties intended to enter into a contract is a question of fact to be determined by the trial court. *Id.* at ¶ 35. Unlike an express contract, however, acceptance of a contract implied-in-fact can be proven by circumstances demonstrating that the parties intended to be bound. *Id.* ¶ 43. A "contract implied-in-fact is one in which a contractual duty is imposed by a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promisor which show an intention to be bound." *Kohlenbrener v. North Suburban Clinic, Ltd.,* 356 Ill.App.3d 414, 419, (2005). More specifically, an "implied-in-fact contract may be found by examination of the acts of the parties even in the absence of any express statement of specific agreement regarding the

details of the contractual relationship." *Id.*

Whether a "meeting of the minds" occurred depends on the parties' objective conduct, and not their subjective beliefs. *Paxton–Buckley–Loda Educ. Ass'n, IEA–NEA v. Ill. Educ. Labor Relations Bd.*, 304 Ill.App.3d 343 (1999). As demonstrated, NMH sufficiently pled Defendant's objective conduct, including the following: a) NMH received authorization for treatment from Defendant (Complaint at ¶¶ 11-12); b) Defendant approved the admission of Patients (*Id.* at ¶ 12); c) Defendant paid some portion, but not full and proper reasonable value of the claims; (*Id.* at ¶ 17); d) Defendant received premium payments for the Patients' enrollment and coverage in Defendant's respective health plans (*Id.* at ¶ 18); e) Defendant knew and understood that NMH rendered the treatment to Patients with the expectation of being paid (*Id.* at ¶ 21); f) Defendant knew and understood, through industry custom and practice that NMH that NMH would render medically necessary care to Defendant's beneficiaries, submit bills for such care to Defendant and that Defendant would pay the usual and customary value to NMH for the necessary medical treatment rendered (*Id.* at ¶ 22); and g) Defendant represented that Patients were beneficiaries and verified eligibility, provided authorization numbers and approved admissions of Patients. *Id.* at ¶ 23. At no time did Defendant represent that it would not pay the usual and customary value to NMH for the necessary medical treatment rendered to Patients. *Id.* at ¶ 24.

Defendant and NMH also had a prior course of ongoing conduct, which included among other things: a) Defendant's issuance of identification cards to Patients; b) Defendant's instructing Patients to present such identification cards to medical providers so as to give

assurances to those medical providers that such care would be paid for; c) NMH communicating

with Defendant to ask for authorizations to render medical care to Patients and Defendant issuing

authorizations to NMH for such care; d) Defendant communicating to NMH the medical

eligibility benefits for Patients without advising NMH that Defendant would not make full

payment of the usual and customary value of services to be provided to Patients; e) Defendant

sending written approvals to NMH for the specified medical services for Patients; and f)

Defendant requesting that NMH send Defendant clinical information and medical records. *Id.* at

¶ 25. In addition, prior course of conduct by Defendant included NMH submitting claims to

Defendant and in response, Defendant would properly pay the usual and customary value of

those claims. Over the last five (5) years, NMH has billed numerous claims and Defendant has

satisfactorily paid on a number of claims submitted by NMH in the near identical manner and

method as the facts alleged in its Complaint. *Id.* at ¶ 26.

Defendant wishes this Court to ignore the totality of Defendant's objective conduct pled

by NMH and for the Court to microscopically focus on recognizable damages alone as a reason

to escape liability. MTD at pg. 7. Defendant ignores that it already paid $179,596.77 for the

services NMH provided at issue in this dispute. Complaint at ¶ 33. Defendant, a nation-wide

health insurance company provides healthcare coverage to Illinois residents and is not in the

business of handing out free money. *See generally* MTD. This Court must find that Defendant's

conduct was unambiguous. *See e.g. Alexian Bros. Health Providers Ass'n v. Humana Health

Plan, Inc.,* 330 F. Supp. 2d 970, 974 (N.D. Ill. 2004)(finding no ambiguity in conduct);

*Szafranski v. Dunston*, 393 Ill.Dec. 604, 34 N.E.3d 1132, 1157 (Ill. App. 2015) ("The intended

- 6 -        **OPPOSITION TO MOTION TO DISMISS**

meaning of ambiguous contract language may be derived from the circumstances surrounding

the formation of a contract or from the conduct of the parties subsequent to its formation.")  The

question is this case is not whether Defendant is obligated to pay for the services rendered, but

instead the amount that Defendant is obligated to pay.

Additionally, assuming *arguendo* that the implied-in-fact contract did not contain a price

term, price terms can be inferred as being the reasonable value of services and survives a motion

to dismiss.  If there is an implied contract pursuant to which one party agrees to provide services

to another and there is no provision setting forth the amount that is to be paid, the law implies an

agreement to pay a reasonable price for the services.  *Victory Memorial Hospital v. Rice* (1986),

143 Ill.App.3d 621, 623; *Protestant Hospital Builders Club v. Goedde* (1981), 98 Ill.App.3d

1028, 1031.  The courts in both cases determined that these contractual terms were too indefinite

to enforce and held that the implied-in-fact contracts obliged plaintiffs to pay a reasonable price

for the services rendered.  *Id.*  Implied-in-fact contracts arise from promissory expressions which

may be inferred from facts and circumstances that show an intent to be bound.  *Century 21*

*Castles By King, Ltd. v. First National Bank* (1988), 170 Ill.App.3d 544, 548.  An implied-in-fact

contract to pay for services is established if the party seeking payment shows that the services

were carried out under circumstances which would give the recipient reasons to understand that

they had not been performed gratuitously or for some other person.  *People ex rel. Hartigan v.*

*Knecht Services, Inc.* (1991), 216 Ill.App.3d 843, 851.  In *Knecht Services, Inc.*, the court

concluded that implied-in-fact contracts existed when the consumers contacted defendants to

request their services and it was clear from the evidence that the consumers intended to pay for

those services. *Id.* Here, the question of what the reasonable value of the services performed is a question of fact and Defendant's MTD is inappropriate as Defendant's own conduct in already paying a portion of the alleged amount owed shows an intention to be bound.

Defendant confuses the requirement of an unambiguous promise to payment for a promissory estoppel cause of action with the requirement of unambiguous conduct for an implied-in-fact contract. ECF No. 7 pgs. 10-13; citing to *A Centro Medico Panamericano, Ltd.v. Laborers' Welfare Fund of the Health & Welfare Dept. of the Constr. & Gen. Laborers' Dist. Coun. of Chicago & Vicinity*, 2015 IL App (1st) 141690., ¶¶ 13, 15; *Advanced Ambulatory Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co.,* 261 F. Supp. 3d 889, 896 (N.D. Ill. 2017)*; Conn. Gen. Life Ins. Co. v. Southwest Surgery Ctr., LLC*, 349 F. Supp. 3d 718, 726 (N.D. Ill. 2018). Northwestern has not pled a promissory estoppel cause of action and therefore Defendant's reliance on such precedent is inappropriate. *See generally* Complaint; ECF No. 1-1 pgs. 11-14; MTD ECF No. 7, pgs. 10-13.

Finally, NMH plausibly alleges the existence of consideration as consideration is a detriment to the offeror or benefit to the offeree, or "some bargained-for exchange between them." *Doyle v. Holy Cross Hospital*, 186 Ill.2d 104, 112 (1999). NMH clearly identifies the detriment it incurred by the lack of full payment while performing services non-gratuitously. Complaint at ¶¶ 11-33. NMH also clearly identified the benefit directly conferred on Defendant as the provisions of medical services to Patients. *Id.* Directly on point regarding whether NMH plausibly alleges the existence of a benefit conferred to Defendant, the Illinois state court, in *Michael Reese Hosp. & Med. Ctr. v. Chicago HMO, Ltd*., found that a nearly identical pleading

of facts as in NMH's Complaint successfully alleged a benefit conferred. *Michael Reese Hosp. & Med. Ctr. v. Chicago HMO, Ltd*., 196 Ill. App. 3d 832, 836, (1990). Plaintiff Reese alleged in its complaint that under the contract between the Illinois Department of Public Aid ("IDPA") and Chicago HMO, Ltd. ("CHMO"), IDPA provided payments to CHMO in exchange for which CHMO was to (1) provide medical services to CHMO members and (2) pay for all emergency services rendered by hospitals to its members, whether or not it had entered into a contract with those hospitals. *Id.* Reese also alleged that a number of CHMO members had received treatment at Reese; that CHMO refused to fully reimburse Reese for the care provided to such patients at Reese's usual and customary rate and instead paid only the Illinois Competitive Access and Reimbursement Equity ("ICARE") rate; that IDPA did not intend the ICARE amount to be applied in reimbursing hospitals; that the payments CHMO received from IDPA on behalf of its members exceeded the ICARE amount; and that if CHMO were allowed to reimburse Reese at the ICARE rate, and in some instances escape reimbursement entirely, it would be unjustly enriched. *Id.* The *Reese* court found that those allegations sufficiently alleged that CHMO had received a benefit, and that the retention of the benefit would be unjust and to the detriment of Reese*. Id.,* citing *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.* (1989), 131 Ill.2d 145, 137.

As such, for all of the above reasons, NMH's breach of implied-in-fact must survive and this Court must deny Defendant's MTD.

**b.** *NMH Quantum Meruit Claim Survives*

To state a viable claim for *quantum meruit,* NMH must plausibly allege: "(1) that [it] performed a service to benefit the defendant; (2) [it] performed the service non-gratuitously; (3) Defendant accepted [its] services; and (4) no contract existed to prescribe payment for this service." *Marcatante v. City of Chi.*, *Ill*, 657 F.3d 433, 443 (7th Cir. 2011) (citing *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 931 N.E.2d 810, 825 (Ill. App. Ct. 2010)). NMH's claims survive Defendant's attack for the following reasons.

*First*, as described in Section II (a), under the analysis in *Michael Reese Hosp. & Med. Ctr.,* NMH successfully alleges it rendered a benefit to Defendant. *Michael Reese Hosp. & Med. Ctr.*, 196 Ill. App. 3d at 836. NMH pled that a) by treating Patients and initiating contact with Defendant, NMH provided a benefits to Defendant and Defendant failed to compensate properly NMH for that received benefits, despite prior and on-going course of conduct, b) NMH rendered such treatments after the implied requests for such services by Defendant and NMH intended those services to benefit Defendant, and c) Defendant directly and deliberately benefited from those services by prompting, through its words, its prior and on-going conduct, and the custom and practice within the healthcare industry, that NMH perform those services on Patients who were beneficiaries of Defendant. By performing those services on Defendant's beneficiaries, NMH fulfilled Defendant's obligation to secure medically necessary healthcare for its beneficiaries. When Patients received those services, the express insurance coverage made between Defendant and Patients was satisfied, and Defendant was able to retain rightly the premiums paid on behalf of Patients for enabling Patients to receive the medical care performed

by NMH.  Complaint at¶¶ 34-56.  NMH appropriately established that Defendant is obligated to pay for services rendered to its beneficiaires by NMH.  *Id.*

*Second*, NMH properly established that Defendant voluntarily accepted a benefit which would be inequitable for Defendant to retain without proper payment because the law implies a promise to pay reasonable compensation when valuable services are knowingly accepted. *Plastics & Equip. Sales Co. v. DeSoto, Inc.*, 91 Ill. App. 3d 1011, 1017, (1980)  NMH pled that Defendant knew of the services to be performed, instructed its beneficiaries (Patients) to provide insurance cards to NMH so as to give assurances to NMH that such care would be paid for; authorized the services to be performed; approved admission, requested medical records related to the services performed, and Defendant unjustly benefitted by not paying fully NMH for the reasonable values of such services.  Complaint at ¶¶ 34–56.  Defendant promised Patients that it would pay medical providers like NMH who provided necessary medical treatment to Patients in exchange for Patient's premiums and satisfaction of its managed care agreements with Patients. *Id.*  Defendant never objected to the services, and in fact partially paid for the services.  *Id.* NMH presents evidence that Defendant authorized, had prior knowledge of the services, and accepted the benefits of those services.  *Cove Mgmt. v. AFLAC, Inc.*, 2013 IL App (1st) 120884, ¶ 37.

**Third**, NMH may allege, and has properly alleged in the alternative, that no contract existed to prescribe for payment for this service.  *Marcatante*, 657 F.3d at 443.  A party accepting goods and services impliedly agrees to pay the reasonable and customary charges for those goods and services.  *Victory Memorial Hospital*, 493 N.E.2d at 119.  In this case, the

reasonable and customary values are what are prescribed for payment.

**Fourth**, Defendant again misconstrues the holding in *Midwest Emergency Assocs.-Elgin Ltd. v. Harmony Health Plan of Ill., Inc.*, 382 Ill.App. 3d 973, 982–83 (1st Dist. 2008). The *quantum meruit* claim in *Midwest Emergency Assocs.* was dismissed because evidence in the case established that the rate of payment ***already paid*** to the providers was the reasonable value established by Medicaid. *Midwest Emergency Assocs.*, 382 Ill. App. 3d at 983. The court noted that "Managed care risks extinguishment if all nonaffiliated emergency healthcare providers are entitled, under theories of quantum meruit and unjust enrichment, **to full reimbursement for services** provided to a managed care organization's enrollees." *Id* (emphasis added). The Court did not hold that non-affiliated providers for emergency and non-emergency authorized services are not entitled to recovery in *quantum meruit* **for the reasonable values of the services provided**. *Id.*

In this case, however, Defendant has neither established that it paid the full rates under any contract nor the full reasonable value of the services, and it has not even controverted the fact that it did not pay anything on some of the claims in its MTD. *See generally* Ex. A. of Complaint; MTD. What Defendant is improperly attempting to do, is to turn the ruling of *Midwest Emergency Assocs.,* which is a holding on the proper rate of payment, into a ruling on the **right of a non-affiliated provider to recover** the proper rate of payment for emergency and non-emergent authorized services. *Midwest Emergency Assocs.*, 382 Ill. App. 3d at 978.

Further, Defendant's citation to *Midwest Emergency Assocs.* is misleading as this statute

does not require NMH to accept **any** payment as payment in full. That is the key difference here, as NMH has alleged that Defendant improperly paid for the medically necessary services NMH provided, and that Defendant paid some amount but not the proper amount, if anything at all. *See generally* Complaint. NMH alleges that it is due the reasonable value of the services provided. *Id.* at ¶ 50. NMH also believes that its usual and customary charges are the reasonable value for its services. *Id.* NMH is still allowed to pursue its causes of action for breach of implied in fact contract and *quantum meruit.* See Sect. II (a) of this Response. It is a material question of fact what NMH's usual and customary charges are and whether Defendant paid the proper amount for such services. *Plumbers & Pipefitters Loc. No. 25 Welfare Fund v. Sedam*, 2014 WL 2731642, at 5 (C.D. Ill. June 16, 2014). However, Defendant has failed to meet its evidentiary burden under Fed.R.Civ.P. 12(b)(6) and establish that Defendant *already paid NMH at the reasonable and customary value for such services*. *Id. (emphasis added).* Such failure necessitates that this Court deny Defendant's MTD.

The only wronged and incomplete party is NMH. *See generally* Complaint. Defendant earned the right to retain the premiums it collected from Patients for the treatment Defendants caused Patients to receive. *Id.* Patients received medically necessary care that improved their quality of life. *Id.* The only party to bear an inequitable position is NMH, who received either partial or no payment for the 16 claims. *Id.* NMH should be made whole and to be fairly compensated the provided services' reasonable value. *Id.*

## III.    CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests the Court deny

Defendant's Motion to Dismiss.

Dated:  3/14/2022

                                     Respectfully submitted,

                                     LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC.

By:   /s/
        One of the Attorneys for Plaintiff
        NORTHWESTERN MEMORIAL
        HEALTHCARE

David F. Mastan, Esq., ARDC #6328951
Marcus R. Morrow, Esq., ARDC #6317812
LAW OFFICES OF STEPHENSON, ACQUISTO & COLMAN, INC. (62848)
20 N. Clark St., Suite 3300
Chicago, IL 60602
Phone: (312)-626-1870
Fax: (818)-559-5484
dmastan@sacfirm.com
mmorrow@sacfirm.com

---

26828 NMH v. Anthem           - 14 -    **OPPOSITION TO MOTION TO DISMISS**