IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORTHWESTERN MEMORIAL HEALTHCARE, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:21-cv-06306 |
| v. | ) ) ) | District Judge: Hon. Gary Feinerman Magistrate Judge: Hon. Beth W. Jantz |
| ANTHEM INSURANCE COMPANIES, INC. d.b.a. ANTHEM BLUE CROSS AND BLUE SHIELD; COMMUNITY INSURANCE COMPANY d.b.a. ANTHEM BLUE CROSS AND BLUE SHIELD; ANTHEM BLUE CROSS OF CALIFORNIA; ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; and DOES 1 THROUGH 25, INCLUSIVE, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Martin J. Bishop
Alexandra M. Lucas
Reed Smith LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606
Tel: 312.207.1000
Fax: 312.207.6400
E-Mail: mbishop@reedsmith.com
E-Mail: alucas@reedsmith.com

*Attorneys for Anthem Insurance Companies, Inc. d.b.a. Anthem Blue Cross and Blue Shield; Community Insurance Company d.b.a. Anthem Blue Cross and Blue Shield; Anthem Blue Cross of California; Anthem Blue Cross Life and Health Insurance Company; and Does 1 through 25, Inclusive*

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1
ARGUMENT ...................................................................................................................... 3
I.      Northwestern's Implied Contract Claim Should be Dismissed As the Allegations Do Not Plausibly Demonstrate the Required Meeting of the Minds. ............................... 3
II.     Northwestern's *Quantum Meruit* Claim Should be Dismissed Because Northwestern Cannot Plead that it Conferred a Benefit on the Anthem Defendants. ............................................................................................................... 7
CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Associated Milk Producers v. Meadow Gold Dairies*,
    27 F.3d 268 (7th Cir. 1994) ...................................................................................6

*BMO Harris Bank, N.A. v. Porter*,
    2018 IL App (1st) 171308 ......................................................................................3

*Centro Medico Panamericano, Ltd. v. Benefits Mgmt. Grp., Inc.*,
    2016 IL App (1st) 151081 ......................................................................................7

*Centro Medico Panamericano, Ltd. v. Laborers' Welfare Fund of the Health & Welfare Dept. of the Constr. & Gen. Laborers' Dist. Council of Chicago & Vicinity*,
    2015 IL App (1st) 141690 ......................................................................................4

*First Nat'l Bank v. Sylvester*,
    196 Ill. App. 3d 902 (1990) ....................................................................................4

*Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*,
    2018 IL App (1st) 163351 ......................................................................................7

*Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*,
    2017 IL App (1st) 160756 ......................................................................................3

*Michael Reese Hosp. & Med. Ctr. v. Chi. HMO, Ltd.*,
    196 Ill. App. 3d 832 (1990) ..............................................................................5, 8, 9

*Midwest Emergency Assocs.-Elgin Ltd. v. Harmony Health Plan of Ill., Inc.*,
    382 Ill.App. 3d 973 (1st Dist. 2008) .......................................................................9

**Rules**

Fed. R. Civ. Proc. 12(b)(6) ................................................................................1, 10

**INTRODUCTION**

As set forth in the Anthem Defendants'[1] Motion (ECF No. 7), Northwestern's[2] Complaint fails to state viable claims for relief and should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] Northwestern's Opposition (ECF No. 24) fails to rebut the Anthem Defendants' arguments, does not cite any on-point case-law in support of Northwestern's arguments, and confuses the key issues governing the legal sufficiency of its claims.

At base, Northwestern's Amended Complaint (ECF No. 1-1, "Complaint") depends entirely on the false claim that routine communications and conduct unrelated to reimbursement, such as benefits verification and authorization, somehow obligate the Anthem Defendants to pay Northwestern's usual and customary or unilaterally-set billed charges for medical services provided to the Anthem Defendants' members. But courts have consistently rejected factually identical claims because that is not how the insurance industry operates, and such an approach find no support in contract law. Rather, it is the terms of the members' health benefit plans that dictate what providers are paid for their services, and the Anthem Defendants have already processed the health benefit claims at issue here in accordance with the applicable plans (and in accordance with Northwestern's binding contract with Blue Cross and Blue Shield of Illinois, which Northwestern conspicuously failed to mention in its Complaint). Northwestern now seeks to unjustly enrich itself

---

[1] Defendants Anthem Insurance Companies, Inc. d.b.a. Anthem Blue Cross and Blue Shield ("AICI"); Community Insurance Company d.b.a. Anthem Blue Cross and Blue Shield ("CIC"); Anthem Blue Cross of California ("ABC"); and Anthem Blue Cross Life and Health Insurance Company ("ABCLH") (collectively the "Anthem Defendants").
[2] Plaintiff Northwestern Memorial Healthcare.
[3] Defendants have withdrawn that portion of the Motion that sought dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2). *See* Joint Status Report, ECF No. 22; Feb. 23, 2022 Order, ECF No. 23.

with awindfall recovery by requesting additional unwarranted payments, despite failing to plead facts entitling it to such relief under either of its legal theories.

Northwestern's claim for breach of implied contract fails because the conduct it alleges gave rise to a contract between it and the Anthem Defendants—including the Anthem Defendants' verification of the patients' health benefits eligibility, responses to Northwestern's requests for authorization, and issuing of member identification cards to the patients—does not suggest a meeting of the minds by which the Anthem Defendants agreed to pay any amount to Northwestern, much less the usual and customary rate or billed charges (which are unilaterally set by providers and completely untethered from market forces or the provider's actual expectation of payment). Consequently, the allegations do not permit an inference that an implied contract was formed between the parties. In its Opposition, Northwestern offers the Court no authority or logical reason for the proposition that routine communications and conduct unrelated to reimbursement could form an implied contract to pay any amount. Moreover, its emphasis on conduct between the Anthem Defendants and the patients (*e.g.*, accepting premiums and issuing insurance cards) undercut Northwestern's argument because they implicitly acknowledge that the Anthem Defendants' payment decisions are controlled by the **health benefit plans of the patients**, not any independent agreement between the Anthem Defendants and Northwestern.

Northwestern's *quantum meruit* claim similarly fails because the law is clear: a provider does not confer a benefit on health payors like the Anthem Defendants by providing services to patients. On the contrary, a provider benefits patients by providing them with medical services. Northwestern accordingly did not confer upon the Anthem Defendants any benefit that they improperly retained. In its Opposition, Northwestern again recounts its insufficient allegations, which revolve around the assertion that the Anthem Defendants retained a benefit through

collecting the patients' premiums. Collecting premiums, however, is entirely disconnected from a singular provider's treatment of a patient, and Northwestern offers no applicable authority to rebut the many cases holding no benefit is conferred in this precise scenario. The Complaint should be dismissed in its entirety and with prejudice.

## ARGUMENT

**I.  Northwestern's Implied Contract Claim Should be Dismissed As the Allegations Do Not Plausibly Demonstrate the Required Meeting of the Minds.**

The allegations on which Northwestern relies for its breach of implied contract claim do not plausibly allege that there was a required meeting of the minds between the parties giving rise to an enforceable implied contract, let alone one by which the Anthem Defendants agreed to pay usual and customary prices (as Northwestern claims). *See Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 2017 IL App (1st) 160756, ¶ 64 ("[A] contract implied in fact contains all of the elements of a contract, including a meeting of the minds."). On the contrary, Northwestern's allegations underscore that there was no meeting of the minds between the parties, and dismissal of Northwestern's complaint is therefore required. *See, e.g., BMO Harris Bank, N.A. v. Porter*, 2018 IL App (1st) 171308, at ¶ 56 (affirming trial court's dismissal of a claim for breach of implied-in-fact contract when the complaint contained conclusory allegations and did not "show[] that there was a meeting of the minds"). Northwestern's Opposition simply repeats its deficient allegations, fails to distinguish on-point and persuasive precedent, and points to extraneous and irrelevant case law.

For this claim, Northwestern relies exclusively on the fact of routine communications and conduct that are unrelated to reimbursement and cannot plausibly give rise to an enforceable implied contract. For example, Northwestern points to benefits verification and authorization communications, claiming that those support the existence of the alleged contract. *See* Opposition

at 5–6. But as the Anthem Defendants detailed extensively in their opening brief, courts in Illinois and across the country routinely hold that these communications are not tantamount to a promise to pay the provider any amount, let alone usual and customary or billed charges. *See* Motion at 11–12.

In the Motion, the Anthem Defendants provided just a sampling of on-point cases in other jurisdictions holding that identical allegations were not sufficient to state an implied-in-fact contract claim. *See* Motion, 12 n.5. These well-reasoned cases are persuasive precedent for dismissal of the implied contract claim here. And, contrary to Northwestern's contention, *Centro Medico* and the other Illinois decisions involving promissory estoppel claims directly apply. Promissory estoppel claims require a plaintiff to plead a promissory expression, which may be implied through conduct. *See First Nat'l Bank v. Sylvester*, 196 Ill. App. 3d 902, 912 (1990) (stating that for promissory estoppel, "[a]n express promise is not required. Rather, the promise may be inferred from conduct or words.") (citations omitted). Decisions in this jurisdiction holding that a promissory estoppel claim cannot be based upon benefits verification and authorization communications therefore *de facto* hold that such communications do not establish an implied promise to pay through conduct. *See, e.g., Centro Medico Panamericano, Ltd. v. Laborers' Welfare Fund of the Health & Welfare Dept. of the Constr. & Gen. Laborers' Dist. Council of Chicago & Vicinity*, 2015 IL App (1st) 141690., ¶ 15 ("It is, however, ***not*** common or expected that an insurer or benefit plan would consent to paying a provider based on the provider's unilaterally determined usual and customary charge. Plaintiff has provided no compelling reason why insurance companies, as a standard industry practice, would agree to terms that so unilaterally favor medical institutions, to the detriment of the insurance companies.") (emphasis in original).

Northwestern notably cites no authority for the proposition that routine provider-payor communications can form an implied contract. *See generally* Opposition. In fact, it cites only one case involving payors and providers to argue the sufficiency of its implied contract claim, and this case pertains exclusively to restitution and whether the defendant had retained any benefit (as established below, this decision is also distinguishable from Northwestern's *quantum meruit* claim). *See Michael Reese Hosp. & Med. Ctr. v. Chi. HMO, Ltd.*, 196 Ill. App. 3d 832, 836 (1990). As such, *Reese* is irrelevant to the elements of an implied contract claim, including the critical question of whether the parties had a meeting of the minds. The weight of case law both within and outside of Illinois holds that authorization and benefits verification communications do not permit an inference that an implied contract was formed between the parties.

The rest of Northwestern's allegations in support of its breach of implied contract claim are similarly insufficient. For example, whether the Anthem Defendants received premium payments from their members and issued identification cards cannot plausibly support a meeting of the minds between the parties regarding payment of the healthcare claims in dispute. In fact, these allegations are contrary to the existence of an implied contract between the parties, as they underscore that the Anthem Defendants' obligation to pay for healthcare claims is **to the patients**, not the patients' healthcare providers (like Northwestern). It is the patients' health benefit plans that controlled the Anthem Defendants' reimbursement of the disputed claims, not any supposed independent agreement with Northwestern. The controlling nature of these health benefit plans also explains why the Anthem Defendants may not have paid certain claims in dispute—benefit plans may have exclusions for certain services whereby no benefits are payable, or may have high deductibles through which the patient, not the Anthem Defendants, is responsible for paying

benefits up to a certain point. Thus, in light of the controlling health benefit plans, any non-paid claims do not indicate problematic conduct on the Anthem Defendants' part.

Further, Northwestern's allegations of the parties' past conduct are irrelevant to the claims at issue. As described in the Motion, the allegation that the Anthem Defendants made past payments "on a number of claims submitted by" Northwestern is impermissibly vague and does not establish a course of dealing, particularly when the Anthem Defendants did not pay Northwestern's desired amount on at least the 16 claims at issue in this case as. *See* Motion, 13. And to the extent that Northwestern contends routine authorization communications between it and the Anthem Defendants are relevant past conduct, this is incorrect because, as described above and as a matter of law, such interactions do not create a binding contractual obligations between healthcare providers and payors.

In addition, that the Anthem Defendants' allegedly paid some of the amount in dispute is not supportive of Northwestern's claim. Rather, it underscores that there was no meeting of the minds; otherwise, the Anthem Defendants would have paid the claims to Northwestern's satisfaction. *See Associated Milk Producers v. Meadow Gold Dairies*, 27 F.3d 268, 271 (7th Cir. 1994) ("In particular, a disagreement over price may show that the parties failed to reach an agreement."). If anything, these supposedly "partial" payments indicate that for certain patients, the controlling health benefit plan required the Anthem Defendants to approve benefits for Northwestern's services, though not at the rate Northwestern seeks.

Finally, the Court should reject Northwestern's groundless notion that the Anthem Defendants' entered into a binding contract by not representing that they would ***not*** pay Northwestern's usual and customary rate. It was not the Anthem Defendants' burden to dispel Northwestern's undisclosed and unsubstantiated belief regarding the Anthem Defendants'

payment obligation. *See Centro Medico Panamericano, Ltd. v. Benefits Mgmt. Grp., Inc.*, 2016 IL App (1st) 151081, ¶ 32.

In sum, the Complaint fails to state a plausible claim for breach of implied contract. The Opposition demonstrates that Northwestern cannot cure the deficiencies on amendment, as the claim entirely hinges on routine communications and conduct unrelated to reimbursement and that cannot indicate a meeting of the minds. Northwestern's breach of implied contract claim should be dismissed with prejudice.

## II. Northwestern's *Quantum Meruit* Claim Should be Dismissed Because Northwestern Cannot Plead that it Conferred a Benefit on the Anthem Defendants.

As established in the Anthem Defendants' Motion, Northwestern's *quantum meruit* claim is similarly deficient because providers do not confer a direct benefit on payors by treating their members as patients. Instead, the clear beneficiary of such treatment is the patient, not the insurance company. *See, e.g., Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, 2018 IL App (1st) 163351, ¶ 17 ("[T]he complaint alleges no facts specifying the benefit the providers bestowed on [the insurers]; they provided a benefit—namely, medical services—only to the injured employee."); *see also* Motion, 14–15 (citing *Marque Medicos* and other cases in support). Northwestern did not even attempt to distinguish the on-point case law the Anthem Defendants cited in the Motion. Northwestern's arguments in the Opposition regarding conferral of a benefit should therefore be rejected as a matter of law, and also independently for the reasons described below.

First, Northwestern claims that "[w]hen Patients received those services, the express insurance coverage made between [the Anthem Defendants] and Patients was satisfied, and [the Anthem Defendants were] able to retain rightly the premiums paid on behalf of Patients for enabling Patients to receive the medical care performed by [Northwestern]." *See* Opposition, 10.

As an initial matter, the very nature of an insurance arrangement is that the insurer retains paid premiums regardless of whether the insured-for event occurs. Retaining premiums when insurance benefits are not payable under the member's plan, or when the insurance benefits are payable but not at the rate Northwestern subjectively believed they should be paid, is not an inequitable retention, and certainly not a retention of a benefit conferred by Northwestern. Moreover, the evidence will show that the Anthem Defendants were not the insurer for many of the claims at issue (rather, they processed the claim as a benefits administrator). Northwestern's premium-related arguments appear to be a misguided attempt to shoehorn the parties' relationship into the arrangement in *Reese*. But *Reese* is inapposite: there, the hospital plaintiff alleged that it had a statutory obligation to provide emergency care to public aid recipients, and that the defendant insurer had a contractual duty with the state to reimburse the hospital for emergency treatment of such patients in exchange for payments from the state. *Reese*, 196 Ill.App. 3d at 833–35. The lawsuit arose because the defendant allegedly refused to pay the plaintiff for emergency treatment of public aid recipients. *Id*. The court held that the plaintiff had sufficiently alleged that the defendant's failure to pay for these services, in violation of its contract with the state while still retaining the related payments from the state, would be inequitable. *Id*. at 836.

Unlike in *Reese*, Northwestern does not and cannot allege that the Anthem Defendants were required by a third-party contract to pay each of the claims at issue.[4] Northwestern does not claim that the patients were government program recipients, nor does it allege that a government contract required the Anthem Defendants to pay for the services provided. Northwestern also does

---

[4] In fact, the evidence will show that it is **Northwestern** that is contractually bound by a third-party contract—its agreement with Blue Cross and Blue Shield of Illinois to accept a certain contracted rate (which is far less than its billed charges) for treating members of out-of-state Blue Cross and Blue Shield plans like the Anthem Defendants.

not allege that the Anthem Defendants issued no payment on the claims at issue (rather, it admits several claims were paid). *See* ECF No. 1-1, Ex. A. Thus, the highly specific facts in *Reese* do not support Northwestern's allegation that a benefit was conferred on and inequitably retained by the Anthem Defendants for the medical treatments at issue in this lawsuit. As discussed above, the Anthem Defendants's payment obligations are governed by the patients' health benefit plans, which may not require payment for a number of reasons (including benefit exclusions and high-deductible requirements).

Northwestern's other points in its Opposition in support of its *quantum meruit* claim are also unavailing. Northwestern claims that "[a] party accepting goods and services impliedly agrees to pay the reasonable and customary charges for those goods and services." *See* Opposition, 11. As established above and in the Motion, the Anthem Defendants did not accept any goods and services from Northwestern through Northwestern's medical treatment of patients. Northwestern fares little better in its characterization of *Midwest Emergency Assocs.-Elgin Ltd. v. Harmony Health Plan of Ill., Inc*., 382 Ill.App. 3d 973 (1st Dist. 2008). There, as Northwestern points out, the appellate court upheld the trial court's dismissal of a *quantum meruit* claim (among others) because it determined the Medicaid payment rate, and not the provider's unilaterally-set billed charges, was an equitable reimbursement for the provider's services to patients. *Id*. at 982. However, the court examined the issue further in dicta and observed that if providers could assert an independent basis for payment through *quantum meruit*, "providers would have little to no incentive to privately negotiate reimbursement rates with such managed care organizations," and this consequence would "risk[] extinguishment" of managed care. *Id*. The admonitions of the *Midwest Emergency* court provide additional reason to dismiss Northwestern's *quantum meruit* claim.

Moreover, contrary to Northwestern's erroneous view of the parties' burdens, at this procedural stage the Anthem Defendants do not have an "evidentiary burden under Fed.R.Civ.P 12(b)(6)" to establish that their payments equate to the reasonable and customary rate (particularly when the Anthem Defendants entirely dispute that, and there is no allegation demonstrating that, this payment rate was required). *See* Opposition, 13. Rather, they need only show—as they have—that Northwestern fails to allege its *quantum meruit* claim as a matter of law.

Northwestern's *quantum meruit* claim fails because Northwestern does not and cannot allege that the Anthem Defendants received an improper benefit, let alone retained one. The *quantum meruit* claim should therefore be dismissed with prejudice.

## CONCLUSION

For all the reasons set forth above, the Anthem Defendants respectfully request that their Motion to Dismiss Northwestern's Complaint be granted in its entirety without leave to amend, in addition to any other relief the Court determines just and proper.

Dated: March 28, 2022

Respectfully submitted,

By: */s/ Alexandra M. Lucas*
Martin J. Bishop
Alexandra M. Lucas
Reed Smith LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606
Tel: 312.207.1000
Fax: 312.207.6400
E-Mail: mbishop@reedsmith.com
        alucas@reedsmith.com

*Attorneys for Anthem Insurance Companies, Inc. d.b.a. Anthem Blue Cross and Blue Shield; Community Insurance Company d.b.a. Anthem Blue Cross and Blue Shield; Anthem Blue Cross of California; Anthem*

*Blue Cross Life and Health Insurance Company; and Does 1 through 25, Inclusive*

**CERTIFICATE OF SERVICE**

  I, Alexandra M. Lucas, an attorney, hereby certify that on March 28, 2022, I caused a true and correct copy of the foregoing document to be filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record.

                */s/ Alexandra M. Lucas*
                Alexandra M. Lucas