UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORTHWESTERN MEMORIAL HEALTHCARE, | ) | |
| | ) | |
| Plaintiff, | ) | 21 C 6306 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| ANTHEM INSURANCE COMPANIES, INC. d/b/a Anthem Blue Cross and Blue Shield, COMMUNITY INSURANCE COMPANY d/b/a Anthem Blue Cross and Blue Shield, ANTHEM BLUE CROSS OF CALIFORNIA, ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, and DOES 1-25, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Northwestern Memorial Healthcare alleges in this diversity suit that Anthem Insurance Companies, Inc., Community Insurance Company, Anthem Blue Cross of California, and Anthem Blue Cross Life and Health Insurance Company (collectively, "Anthem") breached an implied contract to pay its billed rates for healthcare services it provided to sixteen of Anthem's insureds. Doc. 1-1. In the alternative, Northwestern alleges that it is entitled to the value of those medical services under a *quantum meruit* theory. *Ibid*. Anthem moves under Civil Rule 12(b)(6) to dismiss the complaint. Doc. 7. The motion is denied.

## Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set

1

forth in Northwestern's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Northwestern as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Northwestern is a not-for-profit public benefit corporation that provides medical care in Illinois through its subsidiary hospitals. Doc. 1-1 at ¶ 3. From September 2018 through January 2021, Northwestern provided medical treatment to sixteen patients who were members of Anthem's health plans. *Id*. at ¶¶ 14-15. Before admitting the patients, Northwestern contacted Anthem to verify each patient's coverage under an Anthem health plan and to obtain prior authorization for performing the medical services to be rendered. *Id*. at ¶ 26. Anthem verified that each patient was covered under an Anthem health plan, provided authorization for each patient's medical care, and approved the admission of each patient. *Ibid*. Northwestern alleges that "[n]o express written contract between Anthem and [Northwestern] existed to prescribe payment" for the medical services it provided to those patients. *Id*. at ¶ 24.

Northwestern submitted bills to Anthem totaling $2,427,575.94 for those medical services—which Northwestern says represents its "usual and customary charges" for those services—but Anthem paid only $179,596.77. *Id*. at ¶¶ 18-19, 33. Over the past five years, Northwestern has billed "numerous claims" to Anthem, and Anthem paid Northwestern's billed rates in full on "a number of [the] claims submitted … in the near identical manner and method" as those at issue here. *Id*. at ¶ 29. At the motion hearing, Doc. 28, the court asked the parties how often Anthem paid the full amount billed by Northwestern. Northwestern answered that

Anthem paid the billed charges in full approximately 50% of the time, and Anthem answered that it did so close to 0% of the time.

### Discussion

Anthem argues that Northwestern fails to state a claim for breach of an implied-in-fact contract to pay its billed rates because it "does not allege, as it must, any meeting of the minds by which the Anthem Defendants agreed to pay Northwestern's usual and customary charges or billed charges." Doc. 7 at 16. Northwestern responds that Anthem's authorization to treat its insureds, as well as its payment in full of claims submitted by Northwestern over the past five years, establish the requisite meeting of the minds. Doc. 24 at 4-6.

"In order for there to be a contract between parties there must be a meeting of the minds or mutual assent as to the terms of the contract." *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 515 (7th Cir. 2011) (internal quotation marks omitted). Under Illinois law, an implied-in-fact contract arises from a "promissory expression which may be inferred from the facts and circumstances and the expressions [on] the part of the promisor which show an intention to be bound." *Estate of Jesmer v. Rohlev,* 609 N.E.2d 816, 820 (Ill. App. 1993). Such a contract is "a true contract, containing all necessary elements of a binding agreement; it differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *A.E.I. Music Network, Inc. v. Bus. Computers, Inc.,* 290 F.3d 952, 956 (7th Cir. 2002) (internal quotation marks omitted).

An implied-in-fact contract "may be proved by circumstances showing that the parties intended to contract and by the general course of dealing between them." *Dynegy*, 648 F.3d at 517; *see also Al's Serv. Ctr. v. BP Prods. N. Am., Inc.,* 599 F.3d 720, 726 (7th Cir. 2010) ("That

3

is the significance of 'in fact': the circumstances allow an inference that the parties had a deal (a 'meeting of the minds') even though there was no statement to that effect."); *Trapani Constr. Co. v. Elliot Grp., Inc.*, 64 N.E.3d 132, 143 (Ill. App. 2016) ("Generally, for a contract to be valid, an acceptance must be objectively manifested; if it is not, there is no meeting of the minds. Acceptance of a contract implied in fact, however, can be proven by circumstances demonstrating that the parties intended to contract and by the general course of dealing between the parties.") (internal citations omitted). "A course of dealing is a 'sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.'" *Capitol Converting Equip., Inc. v. LEP Transp., Inc.*, 965 F.2d 391, 395 (7th Cir. 1992) (quoting Ill. Rev. Stat. ch. 26, ¶ 1-205(1) (1991)).

Anthem is correct that its coverage verification and treatment preauthorization for the sixteen patients here, standing alone, do not establish that it agreed to pay Northwestern's billed rates. "Courts across the country agree that an insurer's verification of coverage is not a promise to pay a certain amount." *Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, 2020 WL 3547047, at *7 (S.D. Fla. June 30, 2020) (collecting cases); *see also In re Out of Network Substance Use Disorder Claims*, 2020 WL 2114934, at *8 (C.D. Cal. Feb. 21, 2020) ("[R]outine preauthorization communications about the terms of insurance policies do not, as a matter of law, create an implied contract."); *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 218 Cal. Rptr. 3d 562, 575 (Cal. App. 2017) (holding that allegations that an insurer verified coverage and preauthorized treatment "lack the specific facts required … to determine there was any meeting of the minds between the parties … as to the rate [the insurer] would pay [the healthcare provider]").

4

That said, Northwestern also alleges that Anthem paid its billed rates in full on "a number of" the "numerous" invoices it "submitted" over the past five years "in the near identical manner and method" as the claims at issue here, Doc. 1-1 at ¶ 29, and it estimated at the motion hearing that Anthem paid in full 50% of those invoices, Doc. 28. That is sufficient to raise an inference of a course of dealing demonstrating the parties' mutual agreement that Anthem would pay in full Northwestern's billed rates. *See Trans-Aire Int'l, Inc. v. N. Adhesive Co.*, 882 F.2d 1254, 1262 n.9 (7th Cir. 1989) (holding that the defendant's "pa[yment] in full on 24 consecutive occasions over an 18-month period" demonstrated the parties' course of dealing); *Trapani*, 64 N.E.3d at 143 (holding that the defendant's practice of paying invoices in full "under similar circumstances … demonstrated a general course of dealing and a mutual intent to contract"). It follows that the question whether Anthem impliedly agreed to pay Northwestern's billed rates in full, and thus whether the parties had an implied-in-fact contract under which Anthem would pay those rates, cannot be resolved on a Rule 12(b)(6) motion.

Anthem next argues that Northwestern's *quantum meruit* claim, which it brings in the alternative to its implied-in-fact contract claim, *see* Fed. R. Civ. P. 8(a)(3), fails because Northwestern conferred a benefit only on Anthem's insureds, not on Anthem itself. Doc. 7 at 20-21. A *quantum meruit* claim "arise[s] notwithstanding the parties' intentions" and "asks the court to remedy the fact that the defendant was unjustly enriched by imposing a contract." *Marcatante v. City of Chicago*, 657 F.3d 433, 442-43 (7th Cir. 2011) (internal quotation marks omitted). To state such a claim, "the plaintiff[] must [allege that] (1) … [it] performed a service to benefit the defendant; (2) [it] performed the service non-gratuitously; (3) the defendant accepted [its] services; and (4) no contract existed to prescribe payment for this service." *Id*. at

5

443 (citing *Bernstein & Grazian, P.C. v. Grazian & Volpe, P.C.*, 931 N.E.2d 810, 825 (Ill. App. 2010)).

Anthem's argument presents the difficult question whether Illinois law holds that medical services rendered to an insurer's insured benefits the insurer as well as the insured, or just the insured. *Compare Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, 117 N.E.3d 1155, 1161 (Ill. App. 2018) (holding that the plaintiff medical services provider, which claimed that it provided medical services to an employee of the defendant insurance company's insured, failed to sufficiently allege any "benefit [it] bestowed on" the insurance company for purposes of a *quantum meruit* claim), *with Michael Reese Hosp. & Med. Ctr. v. Chi. HMO, Ltd.*, 554 N.E.2d 472, 475 (Ill. App. 1990) (holding that the plaintiff hospital, which claimed that it provided medical services to the HMO's members, sufficiently alleged that the defendant HMO "received a benefit" for purposes of a *quantum meruit* claim). Because discovery on Northwestern's *quantum meruit* claim will be no broader than discovery on its implied-in-fact contract claim, there is no need to run to ground Anthem's *quantum meruit* argument at this stage. Anthem of course may renew its challenge to the *quantum meruit* claim at summary judgment.

## Conclusion

Defendants' motion to dismiss is denied. They shall answer the complaint by June 13, 2022.

May 23, 2022

_____
United States District Judge